# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIGNANT HEALTH HOLDING CORP., | ) | |
| SIGNANT HEALTH LLC, SIGNANT | ) | |
| HEALTH GLOBAL LLC, and | ) | |
| SIGNANT HEALTH GLOBAL | ) | |
| SOLUTIONS LIMITED | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 26-114-GBW |
| | ) | |
| v. | ) | |
| | ) | |
| DEFINIUM THERAPEUTICS, INC. | ) | |
| F/K/A MIND MEDICINE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT DEFINIUM THERAPEUTICS, INC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE

OF COUNSEL:

Sarah Lightdale (*pro hac* pending)
Kaitland Kennelly (*pro hac* pending)
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000
slightdale@cooley.com
kkennelly@cooley.com

Anna O. Mohan (*pro hac* pending)
COOLEY LLP
1299 Pennsylvania Ave NW, Ste. 700
Washington, DC 20004-2400
(202) 842-7800
amohan@cooley.com

Rudolf Koch (#4947)
Travis S. Hunter (#5350)
Alexandra Ewing (#6407)
RICHARDS, LAYTON
& FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
koch@rlf.com
hunter@rlf.com
ewing@rlf.com

*Attorneys for Defendant Definium Therapeutics,
Inc. f/k/a Mind Medicine (MindMed), Inc.*

Dated: February 23, 2026

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................................ii

NATURE OF PROCEEDINGS AND SUMMARY OF ARGUMENT ..................................... 1

FACTUAL BACKGROUND .................................................................................................... 3

    A.    Definium's Clinical Trials .......................................................................... 3

    B.    The Pennsylvania Action ........................................................................... 4

    C.    The Instant Action ...................................................................................... 5

ARGUMENT ............................................................................................................................ 6

I.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE
12(B)(6) BECAUSE IT FAILS TO STATE ANY VIABLE CLAIM ............................ 7

    A.    The Complaint Fails to State a Trade Secret Misappropriation Claim
(Counts II and III) ...................................................................................... 8

        1.    The Complaint Fails to Plead the Existence of a Protectable Trade Secret 8

            a. The Complaint does not sufficiently identify the trade secrets that
Definium purportedly misappropriated ....................................................... 8

            b. The Complaint does not plausibly allege that any of the information it
references was a protectable trade secret .................................................. 12

        2.    The Complaint Does Not Plausibly Allege that Definium Is Liable for Any
Misappropriation by Solomon .................................................................. 13

        3.    Signant's DUTSA Claim Fails Because the Complaint Does Not Allege
that the Misappropriation Occurred in Delaware ..................................... 15

    B.    The Complaint Fails to State a Breach of Contract Claim (Count I) ................... 15

        1.    Definium's Contractual Obligations Arise from the MSA ...................... 15

        2.    The Complaint Does Not Plausibly Allege that Definium Breached Its
Contractual Confidentiality Obligations ................................................... 16

        3.    The Complaint Does Not Plead Damages ................................................. 18

II.    IF THE COURT DOES NOT DISMISS THE COMPLAINT, IT SHOULD
STRIKE THE COMPLAINT'S ALLEGATIONS CONCERNING THE
INTEGRITY OF DEFINIUM'S CLINICAL TRIALS PURUSANT TO RULE
12(F) ............................................................................................................................ 19

CONCLUSION ....................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*360 Painting, LLC v. Misiph*,
No. 3:22-CV-00056, 2023 WL 4533932 (W.D. Va. July 13, 2023) ..........................10, 11, 13

*Albee v. Albee*,
Civil Action No. 21-3984, 2022 WL 2819135 (E.D. Pa. July 19, 2022)................................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................................7

*Chatham Fin. Corp. v. Milhaus, LLC*,
No. 25-CV-00157-SB, 2025 WL 3007405 (D. Del. Oct. 28, 2025)........................................19

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016).....................................................................................................13

*Deitrich v. Danberg*,
No. 14-773-LPS, 2018 WL 1392342 (D. Del. Mar. 20, 2018)..................................................4

*Dow Chem. Canada Inc. v. HRD Corp.*,
909 F. Supp. 2d 340 (D. Del. 2012)...........................................................................................8

*Elsevier Inc. v. Dr. Evidence, LLC*,
2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) .......................................................................10, 11

*FinancialApps, LLC v. Envestnet, Inc.*,
No. 19-1337-CFC-CJB, 2020 WL 4569466 (D. Del. July 30, 2020)......................................18

*Focus Fin. Partners, LLC v. Holsopple*,
241 A.3d 784 (Del. Ch. 2020)..................................................................................................16

*Griffin Corp. Servs., LLC v. Jacobs*,
2005 WL 2000775 (Del. Ch. Aug. 9, 2005) ............................................................................18

*Gupta v. Wipro Ltd.*,
749 F. App'x 94 (3d Cir. 2018) ..................................................................................................4

*H-M Wexford LLC v. Encorp, Inc.*,
832 A.2d 129 (Del. Ch. 2003)..................................................................................................18

*Hydrogen Master Rts., Ltd. v. Weston*,
228 F. Supp. 3d 320 (D. Del. 2017).....................................................................................15, 18

*IDX Sys. Corp. v. Epic Sys. Corp.*,
285 F.3d 581 (7th Cir. 2002) .....................................................................................................9

*IQVIA, Inc. v. Breskin*,
Civil Action No. 22-2610, 2023 WL 2588450 (E.D. Pa. Mar. 20, 2023)...............................10

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Mallet & Co. v. Lacayo*,
16 F.4th 364 (3d Cir. 2021) .................................................................................9, 10

*Medafor, Inc. v. Starch Med. Inc.*,
2009 WL 2163580 (D. Minn. July 16, 2009) ...........................................................11

*MirTech, Inc. v. AgroFresh, Inc.*,
561 F. Supp.3d 447 (D. Del. 2021).....................................................................8, 20

*Montway LLC v. Navi Transp. Servs. LLC*,
No. 25-CV-00381-SB, 2025 WL 3151403 (D. Del. Nov. 11, 2025)...................8, 15

*Nat'l Specialty Pharmacy, LLC v. Padhye*,
734 F. Supp. 3d 922 (N.D. Cal. 2024) ...............................................................10, 11

*Nichols v. Bennett Detective & Protective Agency, Inc.*,
245 Fed. App'x 224 (3d Cir. 2007)...........................................................................18

*Oakwood Lab'ys LLC v. Thanoo*,
999 F.3d 892 (3d Cir. 2021)..........................................................................8, 9, 10

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
848 F.2d 414 (3d Cir. 1988)........................................................................................4

*Pittsburgh Logistics Sys., Inc. v. LaserShip, Inc.*,
No. 2:18-CV-1382, 2019 WL 2443035 (W.D. Pa. June 12, 2019) .........................13

*Power Home Solar, LLC v. Sigora Solar, LLC*,
No. 3:20-CV-00042, 2021 WL 3856459 (W.D. Va. Aug. 30, 2021) ......................11

*Power Integrations, Inc. v. Silanna Semiconductor N.A., Inc.*,
No. 19-1292-LPS, 2020 WL 3508078 (D. Del. June 29, 2020) .........................8, 11

*Sherman v. State Dep't of Pub. Safety*,
190 A.3d 148 (Del. 2018) .........................................................................................14

*Signant Health Holding Corp. v. DeBonis*,
No. CV 24-709, 2024 WL 3049578 (E.D. Pa. June 18, 2024) ................................18

*Signant Health Holding Corp. v. DeBonis*,
No. CV 24-709, 2025 WL 1789646 (E.D. Pa. June 27, 2025) ................................11

*SRI Int'l Inc. v. Internet Sec. Sys., Inc.*,
817 F. Supp. 2d 418 (D. Del. 2011)..........................................................................12

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
630 F. Supp. 2d 395 (D. Del. 2009)..........................................................................19

iii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Synopsys, Inc. v. ATopTech, Inc.*,
  No. C 13–CV–02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013).........................12, 13

*Sysco Mach. Corp. v. DCS USA Corp.*,
  143 F.4th 222 (4th Cir. 2025) ................................................................................................9, 12

*TRB Acquisitions LLC v. Yedid*,
  No. 20-CV-0552 (JMF), 2021 WL 293122 (S.D.N.Y. Jan. 28, 2021) ..............................10, 11

*Universal Processing LLC v. Weile Zhuang*,
  No. 17 CV 10210-LTS, 2018 WL 4684115 (S.D.N.Y. Sept. 28, 2018)..................................13

*Vendavo, Inc. v. Price f(x) AG*,
  No. 17-CV-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) .............................10, 11

*Zoom Imaging Sols., Inc. v. Roe*,
  No. 2:19-CV-01544-WBS-KJN, 2019 WL 5862594 (E.D. Cal. Nov. 8, 2019).....................11

*Zurich Am. Life Ins. Co. v. Nagel*,
  538 F. Supp. 3d 396 (S.D.N.Y. 2021)....................................................................................10

**Statutes**

6 Del. C.
  § 2001(4).................................................................................................................................12
  § 2001 *et seq.* ..........................................................................................................................6

18 U.S.C.
  § 1836 *et seq.* ........................................................................................................................6, 8
  § 1839(3)(A)-(B).....................................................................................................................12

**Other Authorities**

Fed. R. Civ. Proc.
  12(b)(6) .....................................................................................................................................7
  12(f).......................................................................................................................................7, 19

Restatement (Second) of Agency § 228(1)(c) ...............................................................................14

## NATURE OF PROCEEDINGS AND SUMMARY OF ARGUMENT

Definium Therapeutics, Inc. f/k/a Mind Medicine (MindMed), Inc. ("Definium") is an innovative biotechnology company that is harnessing the therapeutic potential of psychedelic medicine to develop cutting-edge treatments for mental health disorders. Definium has spent years running clinical trials to assess the effectiveness of one of its drug candidates, MM120, for the treatment of Generalized Anxiety Disorder.[1] Unfortunately, a disgruntled former vendor, Signant Health Holding Corp. ("Signant"), is attempting to derail the current MM120 trials (and to enrich itself) through unsupported litigation, beginning two years ago when Signant filed a lawsuit against Definium's current vendor and culminating in this separate lawsuit against Definium itself.

Signant provides electronic clinical outcome assessment ("eCOA") services for clinical trials, helping companies collect data on patient outcomes and performance metrics. In 2021, Definium hired Signant to service the Phase 2 trial of MM120. In 2024, after a competitive bid process, Definium selected a new vendor, EMA Wellness ("EMA"), to service the Phase 3 trials for MM120. That decision prompted Signant to file a series of lawsuits in a transparent effort to hold others responsible for the pitch it lost. First, Signant sued EMA and its then-CEO, a former Signant employee, in the Eastern District of Pennsylvania, contending that EMA's CEO exploited his knowledge of Signant's trade secrets to win the Phase 3 contract. But after multiple failed attempts to enjoin EMA from servicing the Phase 3 trials and two years of extensive discovery in that case, Signant hired new counsel and pivoted to a different strategy: going after Definium directly. Just weeks before discovery was set to close in the Pennsylvania case, Signant sought leave to add Definium and one of its employees, Todd Solomon, as defendants in that case. When that strategy failed, Signant circumvented the Pennsylvania court's order and brought this separate

---

[1] MM120 is now known as DT120.

1

lawsuit against Definium in a new forum—without disclosing to this Court that it has been (unsuccessfully) pursuing these same claims in a different court for the past two years.

Contrary to its position in Pennsylvania, Signant alleges here that *Solomon* was at the center of a conspiracy to rig the Phase 3 bid process and that *Solomon* funneled Signant's trade secrets to EMA. Yet despite having the benefit of extensive discovery in the Pennsylvania case—including thousands of documents produced by Definium and Solomon—and three prior attempts at drafting a viable complaint, Signant has yet to identify a single, cognizable trade secret that Definium purportedly disclosed to EMA. Instead, Signant points to broad categories of information, such as "pricing," and "methodologies," ¶ 7,[2] as the basis for its claims against Definium. But those generic categories are insufficient as a matter of law to satisfy Signant's pleading burden, a deficiency that is all the more glaring given Definium's contractual right to own and use certain of Signant's work product from the Phase 2 trial. Signant's failure to identify the information at issue also dooms its breach-of-contract claim, as it is impossible to assess whether Solomon disclosed any confidential information, as that term is defined in the relevant contract, to EMA. To allow Signant's Complaint to proceed in these circumstances would undermine the fundamental purposes of trade secrets protection by subjecting companies to threats of litigation whenever they run a competitive procurement process to choose the best vendors for their work.

The Complaint fails for additional reasons as well. For one, Signant has not alleged any facts to establish that Definium could be responsible for Solomon's alleged actions. To the contrary, the Complaint repeatedly suggests that Solomon disclosed Signant's trade secrets not because Definium desired that he do so or because he desired to benefit Definium, but because he had a personal financial stake in EMA. Further, the only damages Signant alleges in support of its

---

[2] Citations to "¶" refer to the Complaint filed in this action on February 2, 2026 at D.I. 1.

2

breach-of-contract claim are associated with lost business opportunities and potential competitive harm. But the parties' contract is explicit that Definium cannot be held liable for consequential damages of that nature.

These incurable deficiencies warrant dismissal, with prejudice, of Signant's Complaint. If the Court declines to dismiss any of Signant's claims, however, it should strike the allegations in the Complaint that attack the integrity of Definium's clinical trials. Those false and incendiary allegations not only threaten to substantially harm Definium's reputation in a highly regulated industry, they are wholly irrelevant to Signant's claims for relief.

## FACTUAL BACKGROUND

Definium is in the process of developing MM120, a lysergide D-tartrate ("LSD") derivative which acts as a partial agonist at specific serotonin receptors, to treat psychiatric disorders, including Generalized Anxiety Disorder and Major Depressive Disorder. *See* ¶ 3. The Food and Drug Administration has granted MM120 Breakthrough Therapy Designation—a designation reserved for drug candidates that have the potential to offer substantial treatment advantages over existing options for patients with serious diseases. *See* ¶ 27. Before Definium can bring the drug to market, however, it must undergo rigorous testing through phased clinical trials.

### A.    Definium's Clinical Trials

In 2021, Definium hired Signant to assist with Definium's Phase 2 trial for MM120. *See* ¶ 31. Signant provided Definium with eCOA services, which are digital tools used in clinical trials to collect data on patient outcomes, as well as performance metrics. Definium and Signant entered into a Non-Disclosure Agreement ("NDA") in 2020 and then later, in 2022, a Master Services Agreement ("MSA") that expressly superseded the NDA.[3] The MSA establishes requirements for

---

[3] These agreements are properly considered for purposes of Definium's motion to dismiss because they are "integral to" Signant's breach-of-contract claim and "explicitly relied upon in the

3

the protection of certain defined "Confidential Information," Ex. B § 11.1; *see also* ¶ 38, and expressly states that Definium owns any "Work Product" that Signant developed for Definium as part of its Phase 2 work, Ex. B § 12.2. The MSA also sets clear limitations on the parties' liability in the event of a breach: "Neither party . . . shall have any liability of any type . . . for any special, incidental, exemplary, reliance, indirect or consequential damages, including, but not limited to the loss of opportunity, loss of use, or loss of revenue or profit, in connection with or raising out of this agreement." Ex. B § 9.

In 2023, Definium ran a procurement process to select an eCOA vendor for its Phase 3 trials for MM120. ¶ 40. Todd Solomon, Definium's Director of Global Clinical Development, was involved in that process. ¶¶ 6-11, 13. Definium selected EMA to service the Phase 3 trials, and on February 8, 2024, Definium informed Signant that it would not be awarded the Phase 3 contract. *See* ¶¶ 6, 43, 45.

### B.     The Pennsylvania Action

Eight days after learning that EMA had secured Definium's Phase 3 work, on February 16, 2024, Signant sued EMA and EMA's then-CEO Daniel DeBonis in the Eastern District of Pennsylvania. *See Signant v. DeBonis*, No. 2:24-cv-00709-KBH (E.D. Pa.) (the "Pennsylvania Action") Complaint, ECF No. 1.[4] In that action, Signant contends that it was primed to win the Phase 3 work, but DeBonis, a former Signant employee, "used[] Signant's confidential, proprietary

---

complaint." *Deitrich v. Danberg*, No. 14-773-LPS, 2018 WL 1392342, at *2 n.11 (D. Del. Mar. 20, 2018) (quotation omitted). Definium has attached the NDA and the MSA as Exhibits A-B of the accompanying declaration.  Definium has filed the agreements under seal based on a request from Signant.  Definium, however, quotes the agreements without redaction in this brief, as Signant does throughout its Complaint.

[4] This Court is entitled to take judicial notice of public records filed in other court proceedings. *See Gupta v. Wipro Ltd.*, 749 F. App'x 94, 96 (3d Cir. 2018) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988)).

information about MindMed to help EMA divert the opportunity and secure the contract with MindMed." Pennsylvania Action First Am. Compl. ECF No. 34 ¶ 45; *see also id*. ¶ 86. Signant asserts trade secret misappropriation, breach of contract, and tortious interference with contract claims. *See id*. ¶¶ 52-89.

Signant and the EMA defendants engaged in extensive motion practice, with Signant twice trying—and failing—to enjoin EMA from servicing the Phase 3 trials. *See* Pennsylvania Action ECF Nos. 21, 61. The parties also exchanged document discovery and sat for multiple depositions. Definium and Solomon produced thousands of documents in response to third party subpoenas served by Signant. *See* Pennsylvania Action ECF No. 166-1 at 2. In December 2025, weeks before the close of fact discovery, Signant sought leave to amend its complaint to add Definium and Solomon as defendants. *See* Pennsylvania Action ECF No. 122. The Pennsylvania court rejected Signant's request, because Signant "was aware or should have been aware with reasonable diligence" of the allegations against Solomon as early as 2024 and unduly delayed in raising them. *See* Pennsylvania Action ECF No. 160 at 2 n.1.

### C.    The Instant Action

One week after the Pennsylvania court denied Signant's motion, Signant initiated this lawsuit against Definium in Delaware. Signant alleges that, during the Phase 3 procurement process, Solomon—who is not named as a defendant in this Complaint despite Signant's attempt to add him to the Pennsylvania Action—improperly disclosed Signant's trade secrets and other confidential and proprietary information to EMA. ¶¶ 7, 43-45. Signant contends that Solomon engaged in this alleged misconduct because "he was obtaining a financial interest in EMA, which ultimately provided him with a personal stake in EMA's growth and success." ¶ 48; *see* ¶¶ 6, 10. As to Definium, Signant alleges only, in conclusory terms, that the Company "knew or should have known" about Solomon's financial stake in EMA and his alleged misconduct during the

Phase 3 procurement process. ¶¶ 10, 50-53. On this basis alone, Signant contends that Definium is "liable for Solomon's misconduct" under principles of "agency and respondeat superior." ¶ 54.

Signant asserts three claims against Definium: a breach-of-contract claim for violations of the NDA and the MSA (Count I); a trade secrets misappropriation claim under the Delaware Uniform Trade Secrets Act ("DUTSA"), 6 Del. C. § 2001 *et seq.* (Count II); and a trade secrets misappropriation claim under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.* (Count III). *See* ¶¶ 58-83. The Complaint offers only a vague definition of Signant's purported trade secrets: "pricing data, proprietary data structures, operating procedures, methodologies, training programs, and data quality monitoring procedures." ¶ 71; *see also* ¶ 25. At no point does the Complaint identify any specific document or piece of information that constitutes a protectable Signant trade secret, much less any that has been misappropriated by Definium and disclosed to EMA.

## ARGUMENT

This Court should dismiss Signant's Complaint. Despite having access to thousands of pages of discovery from both the EMA defendants and Definium, depositions of key actors, and multiple opportunities to develop its theories across two different lawsuits, Signant has not identified a single specific trade secret that Definium impermissibly disclosed to EMA. Instead, Signant characterizes its purported trade secrets using only broad categories of information, the likes of which courts routinely dismiss as insufficient to state a misappropriation claim. Signant also has alleged no facts to support its conclusory assertions that the purportedly misappropriated information fits within the statutory definition of a trade secret. Nor has Signant alleged facts establishing that Definium should be held liable for any purported misappropriation by a lone employee who, according to the Complaint itself, was motivated by his own personal financial interests rather than those of Definium. And because there is no indication that Signant—if given

yet another bite at the apple—would be able to state a viable trade secret claim, these claims should be dismissed with prejudice.

Signant's breach-of-contract claim fails for similar reasons. The Complaint does not even attempt to explain how Definium disclosed "confidential information" within the meaning of the parties' contracts. Without any specifics, it is impossible to tell whether the disclosed information is actually confidential or whether it is work product that was prepared for Definium as part of Signant's Phase 2 work and so belongs to Definium under contract. The contract's limitation-of-liability provision also expressly precludes Signant from recovering the only damages Signant alleges—from lost business opportunities, lost profits, and other competitive harms. As amendment of the contract claim would thus be futile, it should also be dismissed with prejudice.

If this Court does not dismiss the Complaint, it should, at a minimum, invoke Rule 12(f) to strike the allegations concerning the integrity of Definium's ongoing Phase 3 trials. By its own account, Signant has not worked on these trials and thus has zero good-faith basis to malign Definium by suggesting that the trials might "endanger[] patients," ¶ 3, or by questioning whether the trial data "will be accurate, unbiased, or trustworthy," ¶ 9. Those false and inflammatory assertions are immaterial to Signant's legal claims and significantly prejudice Definium.

## I.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE IT FAILS TO STATE ANY VIABLE CLAIM

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* Courts are "not obligated to accept as true 'bald assertions,' or 'unsupported conclusions

7

and unwarranted inferences.'" *Power Integrations, Inc. v. Silanna Semiconductor N.A., Inc.*, No. 19-1292-LPS, 2020 WL 3508078, at *2 (D. Del. June 29, 2020) (quotation omitted).

> **A.      The Complaint Fails to State a Trade Secret Misappropriation Claim (Counts II and III)**

To state a claim under the DTSA, 18 U.S.C. § 1836 *et seq.*, a plaintiff must allege the existence of a trade secret and that the defendant misappropriated that trade secret. *See MirTech, Inc. v. AgroFresh, Inc.*, 561 F. Supp.3d 447, 453 (D. Del. 2021). The DUTSA is "substantively identical" to the DTSA, so "as a general matter, the viability of a DUTSA claim rises and falls with a DTSA claim." *Montway LLC v. Navi Transp. Servs. LLC*, No. 25- 00381-SB, 2025 WL 3151403, at *6 (D. Del. Nov. 11, 2025) (quotation omitted); *Dow Chem. Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012), *aff'd*, 587 F. App'x 741 (3d Cir. Oct. 14, 2014) (describing similar elements of DUTSA claim).  To plead the existence of a trade secret, a plaintiff must: (1) "sufficiently identify the information it claims as a trade secret" and (2) "allege facts supporting the assertion that the information is indeed protectable as such." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021); *see Dow Chem. Canada*, 909 F. Supp. 2d at 346 (under DUTSA, plaintiff "must show the existence of a trade secret with 'reasonable degree of precision and specificity'" (quotation omitted)). Because Signant has failed to plead these essential elements, its trade secrets claims fail.

> **1.      The Complaint Fails to Plead the Existence of a Protectable Trade Secret**

> **a.      The Complaint does not sufficiently identify the trade secrets that Definium purportedly misappropriated**

To survive dismissal, the information claimed as a trade secret must be described with "sufficient particularity." *Oakwood Lab'ys*, 999 F.3d at 906. This rule serves several important functions. First, it "place[s] a defendant on notice of the bases for the claim being made against it"

and "permit[s] the defendant to ascertain at least the boundaries within which the secret lies." *Id.* Second, it enables the court to assess whether the information plausibly fits within the statutory definition of a trade secret, *see Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025), by "separat[ing] [the secret] from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade," *Oakwood Laby's*, 999 F.3d at 906.

Signant has not described the allegedly misappropriated trade secrets with the requisite specificity.  The Complaint defines Signant's trade secrets as "including its market strategies, proprietary data architecture, clinical trial methodologies, pricing models, and data quality monitoring procedures," ¶ 25, as well as its "pricing data, proprietary data structures, operating procedures, methodologies, training programs, and data quality monitoring procedures." ¶ 71.  But Signant never actually alleges—even in conclusory fashion—that Definium misappropriated any of those trade secrets.  Instead, when discussing the purported misappropriation, Signant says only that Solomon shared "confidential information about Signant's pricing" and "methodologies," ¶ 7, and "Signant's sensitive proprietary information." ¶ 44.  Without any further elaboration, Definium has no way of knowing what exactly Signant is accusing it of disclosing, and Signant cannot plausibly allege that a trade secret was misappropriated.

Even if Signant had connected its general categories of trade secrets to any misappropriation by Definium, those generic references to broad categories of information would be insufficient as a matter of law to identify a trade secret. *Mallet & Co. v. Lacayo*, 16 F.4th 364, 384 n.24 (3d Cir. 2021) (quotation omitted). Courts have repeatedly held that plaintiffs do not plead an actionable trade secret claim when they merely list catchall categories of information that are "more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets [the plaintiff] actually has a basis to

9

believe . . . were misappropriated." *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (emphasis in original).[5] The plaintiff need not "spell out the details of the trade secret." *Oakwood Lab'ys*, 999 F.3d at 906. But invoking "general categories of business and technical information . . . that could be used to describe documents found in any number of corporations" makes it impossible for defendants to properly craft a defense and impossible for the court to separate public information or general knowledge from the purported secrets. *Mallet & Co.*, 16 F.4th at 382; *see TRB Acquisitions LLC v. Yedid*, No. 20-CV-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (dismissing trade secrets complaint where plaintiff did not "offer any particulars of how its strategies and plans function or any other basis for the Court to discern exactly what information it alleges [the defendant] misappropriated, let alone whether that information is protectable").

Applying these principles, courts routinely dismiss as insufficient complaints that describe trade secrets using nearly identical language to that found in Signant's Complaint. In *Elsevier Inc. v. Dr. Evidence, LLC*, for example, the plaintiff alleged that its trade secrets included the company's "data configuration protocols and methods," "process to assess the quality of evidence," and "clinical methods." No. 17-cv-5540 (KBF), 2018 WL 557906, at *5 (S.D.N.Y. Jan. 23, 2018). But like Signant's references to "proprietary data architecture," "data quality monitoring procedures," and "clinical trial methodologies," ¶ 25, those "general categories of 'confidential information,' . . . do not give rise to a plausible allegation of a trade secret's existence," *Elsevier*

---

[5] *See also 360 Painting, LLC v. Misiph*, No. 3:22-CV-00056, 2023 WL 4533932, at *7 (W.D. Va. July 13, 2023); *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 404 (S.D.N.Y. 2021); *Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024); *Albee v. Albee*, Civil Action No. 21-3984, 2022 WL 2819135, at *4 (E.D. Pa. July 19, 2022); *IQVIA, Inc. v. Breskin*, Civil Action No. 22-2610, 2023 WL 2588450, at *4 (E.D. Pa. Mar. 20, 2023).

*Inc*, 2018 WL 557906, at *6 (emphasis in original). Courts have also dismissed complaints that, like Signant's, refer generically to marketing strategies, pricing information, operating procedures, methodologies, and training programs. *See Nat'l Specialty Pharmacy*, 734 F. Supp. 3d at 929 (business methods, pricing strategies, pricing data, marketing methods, other data, computer and software processes and systems); *Power Integrations, Inc.*, 2020 WL 3508078, at *3 (business opportunities and strategies and particularized costing information).[6]

The fact that the court declined to dismiss Signant's complaint in the Pennsylvania Action does not undermine these well-established principles. *See Signant Health Holding Corp. v. DeBonis*, No. CV 24-709, 2025 WL 1789646, at *3 (E.D. Pa. June 27, 2025). In that case, Signant alleged that a former employee of seven years—who was subject to an employment agreement that precluded him from revealing Signant information to anyone outside Signant—went to work for Signant's competitor and shared Signant's secrets to help that competitor. *Id.* at *1. In that prototypical scenario, Signant's reference to general categories of confidential information to which its employee obviously had access was enough to plausibly plead a trade secret misappropriation claim. *See id.* at *3. Here, in contrast, Signant is accusing Definium, a former customer, of disclosing Signant trade secrets as part of Definium's procurement process—without

---

[6] *See also 360 Painting, LLC*, 2023 WL 4533932, at *7 (pricing information, proprietary formulas, business leads, marketing materials, business and operations manuals, business methods); *Power Home Solar, LLC v. Sigora Solar*, LLC, No. 3:20-CV-00042, 2021 WL 3856459, at *10 (W.D. Va. Aug. 30, 2021) (proprietary training, proprietary practices, methods, techniques, and pricing models, confidential customer database, proprietary quote software, sales training manuals); *Vendavo, Inc.*, 2018 WL 1456697, at *3 (pricing information, marketing plans and strategic business development initiatives); *Zoom Imaging Sols., Inc. v. Roe*, No. 2:19-CV-01544-WBS-KJN, 2019 WL 5862594, at *4 (E.D. Cal. Nov. 8, 2019) (pricing, costs, margins, and purchase histories; business, sales and marketing strategies and plans); *Medafor, Inc. v. Starch Med. Inc.*, No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009) (business methodologies, formulas, devices, and compilations of information, including suppliers and customers); *TRB Acquisitions LLC*, 2021 WL 293122, at *2 (core brand and marketing plan strategy).

11

providing any additional details about what those secrets were, how they were documented, and how they were obtained by Definium.  To permit the use of generic allegations in this context—and subject companies to the threat of trade secret litigation any time they select a new vendor as part of a procurement process—would "seriously disrupt ordinary business relationships," *Sysco Mach. Corp.*, 143 F.4th at 230.

In short, Signant's failure to plead specific facts to delineate the information it alleges was misappropriated makes it "impossible for the Court, let alone [Definium], to determine where trade secret protection begins and ends," *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13–CV–02965 SC, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013), and risks precisely the sort of "fishing expedition" that courts take pains to avoid, *Sysco Mach. Corp.*, 143 F.4th at 228. That failure is all the more egregious given that Signant has now filed four different complaints across this case and the Pennsylvania litigation. Because Signant's persistent failure to identify a specific and protectable trade secret makes clear that any further amendment would be futile, its trade secret claims should be dismissed with prejudice. *See SRI Int'l Inc. v. Internet Sec. Sys., Inc.*, 817 F. Supp. 2d 418, 422 (D. Del. 2011).

> **b.** **The Complaint does not plausibly allege that any of the information it references was a protectable trade secret**

Under the DTSA and the DUTSA, information is a protectable "trade secret" only if "the information derives independent economic value . . . from not being generally known . . . and not being readily ascertainable through proper means," and the owner "has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A)-(B); 6 Del. C. § 2001(4) (similar definition under DUTSA). Signant's conclusory allegations cannot satisfy these requirements.

As to the value of its trade secrets, Signant parrots the above statutory definition virtually verbatim, asserting that its trade secrets "derive[] independent economic value . . . from not being

generally known . . . and not being readily ascertainable by proper means." ¶ 72; *see also* ¶ 25 (stating that Signant's information has "independent economic value" because it is not "publicly available"). Paraphrasing "pertinent statutory language or elements of the claims in question," however, is not sufficient to state a plausible claim for relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). And courts have readily concluded that similar recitations of the definition of a trade secret "are wholly conclusory" and "insufficient to adequately plead a cause of action" for trade secret misappropriation. *Pittsburgh Logistics Sys., Inc. v. LaserShip, Inc.*, No. 2:18-CV-1382, 2019 WL 2443035, at *10 (W.D. Pa. June 12, 2019) (evaluating similar assertion); *Synopsys, Inc.*, 2013 WL 5770542, at *6 (same).

Signant likewise fails to plausibly allege that it has taken reasonable measures to keep its information secret. The Complaint alleges that Signant "has invested enormous resources developing and protecting its trade secrets," ¶ 25, and that Signant "has taken reasonable efforts . . . to maintain" the secrecy of its trade secrets, ¶ 72. But Signant offers no explanation of what those efforts were or how it protected its purported secrets. Signant cannot "support an inference that [its] information qualifies as a trade secret" without delineating "sufficient information about [the] . . . measures taken to safeguard the [information]." *Universal Processing LLC v. Weile Zhuang*, No. 17 CV 10210-LTS, 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018); *see 360 Painting, LLC*, 2023 WL 4533932, at *7 (dismissing complaint where plaintiff "fail[ed] to include how the alleged trade secrets were ascertained and protected").

### 2.    The Complaint Does Not Plausibly Allege that Definium Is Liable for Any Misappropriation by Solomon

Beyond failing to sufficiently identify a protectable trade secret, Signant also has not offered a plausible basis for holding Definium responsible for any misappropriation. Signant does not allege that Definium directly misappropriated Signant's trade secrets. Instead, Signant seeks

13

to hold Definium liable under "principles of agency and respondeat superior" for the purported improper disclosure of those secrets by Definium's employee, Todd Solomon, despite not naming Solomon as a defendant. ¶ 54. Even assuming Signant could plausibly allege a misappropriation by Solomon based on the wafer-thin allegations described above, *see* Section I.A.1, Signant has not alleged any facts supporting the conclusion that Definium is responsible for Solomon's alleged conduct.

Employers can be held liable for their employees' tortious conduct only when the employer is acting within the scope of his employment. *See Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148, 153 (Del. 2018). Contrary to the Complaint's suggestion, it is not enough to allege that Solomon had access to the purported trade secrets as part of his job or that he participated in the Phase 3 procurement process. *See* ¶¶ 10, 13, 49, 50. Rather, for Solomon's actions to be within the scope of his employment, Solomon's disclosure of the purported trade secrets must have been "actuated, at least in part, by a purpose to serve the [employer.]" *Sherman*, 190 A.3d at 153 (quoting Restatement (Second) of Agency § 228(1)(c)).

Signant has not plausibly alleged that Solomon's purported disclosure of Signant's trade secrets was motivated by any desire to serve Definium's interests. To the contrary, the Complaint repeatedly emphasizes that Solomon "engaged in these acts because he was obtaining a financial interest in EMA, which ultimately provided him with a personal stake in EMA's growth and success." ¶ 48; *see also* ¶ 6 ("Todd Solomon led this scheme and now holds a financial stake in EMA."); ¶ 1 (alleging that Definium "ran a flawed procurement process that included trade secret theft and self-dealing by a top executive"); ¶ 114 (alleging that Definium's Phase 3 process was "infected by Solomon's personal motivations"). If anything, the Complaint suggests that Definium was *disadvantaged* by Solomon's alleged misappropriation. Indeed, accepting Signant's account,

14

Solomon's misappropriation resulted in Definium's hiring of an "inexperienced" first-time vendor over Signant, which had "delivered successful Phase 2 work" and "was the logical choice to continue the engagement," ¶¶ 4, 40; *see also* ¶¶ 31, 32.

### 3. Signant's DUTSA Claim Fails Because the Complaint Does Not Allege that the Misappropriation Occurred in Delaware

Signant's DUTSA claim fails for the further reason that Signant has not alleged that any misappropriation occurred in Delaware. The DUTSA requires that "the misappropriation happened in Delaware. If the misappropriation happened in another state . . ., the DUTSA does not apply." *Montway LLC v. Navi Transp. Servs. LLC*, 2025 WL 3151403, at *6 (D. Del. Nov. 11, 2025). The Complaint, however, alleges nothing whatsoever about where the purported misappropriation took place. The Complaint merely states that Definium and Signant are incorporated in Delaware, ¶¶ 16, 20, but courts have rejected efforts to rely on similar allegations to establish the requisite nexus with Delaware. *See Montway*, 2025 WL 3151403, at *6. Because the Complaint alleges no facts supporting the conclusion that any misappropriation occurred in Delaware, the DUTSA claim must be dismissed.

### B. The Complaint Fails to State a Breach of Contract Claim (Count I)

To state a claim for breach of contract under Delaware law, a plaintiff must allege facts plausibly demonstrating "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff." *Hydrogen Master Rts., Ltd. v. Weston*, 228 F. Supp. 3d 320, 333 (D. Del. 2017) (quotation omitted). Signant's contract claim fails to plead the second and third of these elements and should be dismissed.

### 1. Definium's Contractual Obligations Arise from the MSA

The first step in analyzing a breach-of-contract claim is to identify the source of the relevant contractual obligations. Signant alleges that Definium's confidentiality obligations arise from two

15

agreements: (1) the NDA signed in July 2020; and (2) the MSA executed in March 2022.[7] But Signant fails to acknowledge that the later-in-time MSA expressly supersedes the earlier NDA. Specifically, the MSA's integration clause states: "This Agreement . . . represents the entire agreement between the parties with regard to the subject matter hereof and supersedes all prior negotiations, representations or agreements, written or oral, regarding such subject matter." Ex. B § 14.13. The "subject matter" of the MSA is the business relationship between Signant and Definium—precisely the same subject matter at issue in the NDA. *Compare* Ex. A (describing a potential corporate partnering relationship between Definium and Signant), *with* Ex. B (describing agreement as governing Signant's provision of services to Definium). By its express terms, then, the MSA supersedes the NDA and supplies the only potentially relevant contractual terms. *See Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 823 (Del. Ch. 2020) (noting that a valid integration clause supersedes the terms of any prior agreement on the same subject matter).

### 2. The Complaint Does Not Plausibly Allege that Definium Breached Its Contractual Confidentiality Obligations

Signant has not plausibly alleged that Definium breached its contractual confidentiality obligations. As Signant acknowledges, the MSA explicitly defines the "Confidential Information" that is protected under the agreement. *See* ¶ 38. Under the MSA, "Confidential Information" must satisfy one of four conditions: (1) it must be "related to a party's products, technology, specifications, manufacturing methods, know-how, pricing, business or marketing plans, business relationships and intellectual property (including copyrights, patents, trademarks and trade secret)"; (2) it must be "clearly identified as "Confidential" at the time of disclosure"; (3) it must be "identified as Confidential Information in writing within five (5) days of disclosure if disclosed

---

[7] The actual customer party to these contracts was Mind Medicine, Inc., which has rebranded to Definium Therapeutics US, Inc., a subsidiary of Definium Therapeutics, Inc.

orally;" or (4) it must be "information that a reasonably prudent person would recognize as requiring confidential treatment when provided to the party." Ex. B § 11.1. The MSA also sets forth specific exclusions from that definition. "Confidential information shall not include information that," among other things, "was in the public domain when disclosed," or "f[ell] into the public domain after disclosure." Ex. B § 11.2.

As with Signant's alleged trade secrets, Signant has provided no explanation of how the purportedly misappropriated information fits within this definition. Signant has not described how that information would be recognized as requiring confidential treatment and has not separated the allegedly confidential information from information in the public domain. *See supra* Section I.A.1. Worse still, the information at issue might very well *belong* to Definium. The MSA elsewhere makes clear that "[u]pon payment in full of all outstanding amounts due . . . , [Definium] shall own all Materials created or developed specifically for it on a customized basis by or on behalf of Signant Health in connection with providing the Services . . . ." Ex. B § 12.2. Signant provides no basis to infer that the information purportedly disclosed was anything other than work product Signant created or developed for Definium in connection with its Phase 2 work, which Definium would be fully contractually entitled—and indeed, fairly expected—to disclose to a new vendor.[8]

The Pennsylvania court recognized this connection between deficiencies in a trade secrets claim and a claim based on a breach of a contractual confidentiality obligations. Specifically, in denying Signant's second motion for a preliminary injunction, the court concluded that Signant's vague references to pricing and pricing methodology were insufficient to establish a likelihood of

---

[8] The prohibition against disclosure of Confidential Information, moreover, does not extend to disclosures to Definium's "consultants" and "professional advisors." Ex. B § 11.3. Signant offers no explanation for why EMA, in servicing Definium's Phase 3 trials, is not a "consultant" or "professional advisor" with whom Definium is entitled to share information.

success on its trade secrets claim. *Signant Health Holding Corp. v. DeBonis*, No. CV 24-709, 2024 WL 3049578, at \*5-6 (E.D. Pa. June 18, 2024). For the same reasons, the court explained, Signant had not established a likelihood of success on its claim based on breaches of its confidentiality agreements with the EMA defendants: Signant's failure to "identif[y] with sufficient specificity any confidential or proprietary information" that was "improperly shared or used in breach of the confidentiality provision" doomed its breach-of-contract theory. *Id.* at \*7. Ultimately, there, as here, Signant could not state a viable breach-of-contract claim without alleging *why* and *how* the contractual provisions at issue were violated. *See FinancialApps, LLC v. Envestnet, Inc.*, No. 19-1337-CFC-CJB, 2020 WL 4569466, at \*3 (D. Del. July 30, 2020).[9]

### 3.      The Complaint Does Not Plead Damages

A plaintiff must also "allege facts plausibly demonstrating . . . a resulting damage to the plaintiff.'" *Hydrogen Master Rts.*, 228 F. Supp. 3d at 333 (quoting *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003)). Delaware courts consistently and properly dismiss contract claims that "'fail[] to . . . support their conclusory allegation of . . . damages' with sufficient factual allegations." *Nichols v. Bennett Detective & Protective Agency, Inc.*, 245 Fed. App'x 224, 231 (3d Cir. 2007) (affirming dismissal) (quoting *Griffin Corp. Servs., LLC v. Jacobs*, Civ. No. 396–N, 2005 WL 2000775, at \*5 (Del. Ch. Aug. 9, 2005)). And here, Signant simply asserts, without factual support, that it has suffered damages because it has lost business opportunities, suffered competitive harm, and lost the value of its trade secrets. *See* ¶¶ 55, 56, 68.

Even if Signant had alleged facts supporting these damages, the damages would not be recoverable and thus amendment would be futile. The MSA states that neither party "shall have

___

[9] Even if the NDA were still in effect, it too protects only specific "Proprietary Information" as defined by the agreement, *see* Ex. A § 1.01, and Signant's failure to allege any details regarding the information at issue would defeat that claim as well.

any liability of any type . . . for any special incidental, exemplary, reliance, indirect or consequential damages, including, but not limited to the loss of opportunity, loss of use, or loss of revenue or profit, in connection with or arising out of this agreement." Ex. B § 9. This provision plainly covers Signant's claimed damages, all of which relate to "loss of [business] opportunit[ies]," "loss of use" of its trade secrets, or "loss of revenue or profit" from those opportunities and secrets. The terms of the parties' contract thus make clear that Definium cannot be held liable for any of Signant's claimed damages. Accordingly, plaintiff's breach-of-contract claim should be dismissed with prejudice. *See Chatham Fin. Corp. v. Milhaus, LLC*, No. 25-00157-SB, 2025 WL 3007405 (D. Del. Oct. 28, 2025).

## II.    IF THE COURT DOES NOT DISMISS THE COMPLAINT, IT SHOULD STRIKE THE COMPLAINT'S ALLEGATIONS CONCERNING THE INTEGRITY OF DEFINIUM'S CLINICAL TRIALS PURUSANT TO RULE 12(f)

Under Rule 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although generally disfavored, motions to strike are granted where "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009) (quotation omitted).[10]

If the Court does not dismiss the Complaint, it should, at a minimum, strike the allegations in paragraphs 3, 4, 9, 11, 12, 41, and 57 that attack the integrity of Definium's Phase 3 trials. These allegations are irrelevant to Signant's claims and substantially prejudicial to Definium. In particular, the Complaint erroneously calls into question the safety of patients participating in the trials and the accuracy of the data generated in those trials:

---

[10] In accordance with Local Rule 7.1.1, Definium requested on February 19, 2026 that Signant amend its Complaint to strike the relevant allegations. Signant declined to do so.

19

- Definium has "endanger[ed] patients," ¶ 3, by selecting an "inexperienced eCOA vendor for its Phase 3 trials," ¶ 4; *see also* ¶ 11 ("Without reliable evaluation, dangerous side effects may go undetected, exposing patients to treatments whose safety and efficacy have not been properly established."); ¶ 41 ("EMA was, in short, not prepared.").

- Definium's use of a purportedly "inexperienced partner . . . raises troubling questions about whether the Phase 3 data will be accurate, unbiased, and trustworthy." ¶ 9; *see* ¶ 12 ("The integrity and accuracy of clinical outcome assessments in trials involving psychoactive compounds like LSD is paramount."); ¶ 57 (alleging that Definium handed "critical clinical trial work to a cheap, controllable vendor").

These statements are false. Signant has had *zero* involvement in the Phase 3 trials and thus has no basis whatsoever to malign those trials. As Signant is well aware, Definium is deeply committed to patient safety and to ensuring that its trials produce accurate results. Signant's baseless and inflammatory assertions to the contrary are highly prejudicial to Definium, which operates in a heavily regulated, highly scrutinized industry. These allegations are also wholly immaterial to Signant's legal claims and have no place in this Complaint—they have no bearing whatsoever on whether Definium misappropriated a trade secret or breached its contracts with Signant. And yet they threaten Definium's relationship with and reputation among patients, regulatory agencies, and investors. Indeed, they seem calculated to do nothing *but* that. Accordingly, this Court should strike these allegations. *See MirTech Inc.*, 561 F. Supp. 3d at 459 (striking allegations about financial health that were "not only irrelevant to the claims and issues before the Court but also impertinent and prejudicial").

## CONCLUSION

For the foregoing reasons, the Court should dismiss Signant's Complaint with prejudice. In the alternative, the Court should strike the allegations related to the integrity of Definium's trials in paragraphs 3, 4, 9, 11, 12, 41, and 57 of the Complaint.

OF COUNSEL:

Sarah Lightdale (*pro hac* pending)
Kaitland Kennelly (*pro hac* pending)
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000
slightdale@cooley.com
kkennelly@cooley.com

Anna O. Mohan (*pro hac* pending)
COOLEY LLP
1299 Pennsylvania Ave NW, Ste. 700
Washington, DC 20004-2400
(202) 842-7800
amohan@cooley.com


Dated: February 23, 2026

/s/ Travis S. Hunter
Rudolf Koch (#4947)
Travis S. Hunter (#5350)
Alexandra Ewing (#6407)
RICHARDS, LAYTON
& FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
koch@rlf.com
hunter@rlf.com
ewing@rlf.com

*Attorneys for Defendant Definium Therapeutics,
Inc. f/k/a Mind Medicine (MindMed), Inc.*

21