## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SIGNANT HEALTH HOLDING CORP.,
SIGNANT HEALTH LLC, SIGNANT
HEALTH GLOBAL LLC, and
SIGNANT HEALTH GLOBAL
SOLUTIONS LIMITED,

               Plaintiffs,

        v.

DEFINIUM THERAPEUTICS, INC. F.K.A.
MIND MEDICINE, INC.,

               Defendant.

Civil Action No. 26-114-GBW

---

Jared W. Newton, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Wilmington, DE; Patrick D. Curran, Eric D. Wolkoff, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Boston, MA; Nathan Hamstra, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Chicago, IL; James N. Boudreau, Joseph J. Mahady, REED SMITH LLP, Philadelphia, PA.

*Counsel for Plaintiffs*

Rudolf Koch, Travis S. Hunter, Alexandra Ewing, RICHARD, LAYTON & FINGER, P.A., Wilmington, DE; Sarah Lightdale, Kaitland Kennelly, COOLEY LLP, New York, NY; Anna O. Mohan, COOLEY LLP, Washington, DC.

*Counsel for Defendant*

## MEMORANDUM OPINION

July 1, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Defendant Definium Therapeutics, Inc.'s ("Definium" or "Defendant") Motion to Dismiss and/or Strike Plaintiffs Signant Health Holding Corp., Signant Health LLC, Signant Health Global LLC, and Signant Health Global Solutions Limited's ("Signant" or "Plaintiff") Complaint ("Motion to Dismiss") (D.I. 11), which has been fully briefed (D.I. 12; D.I. 17; D.I. 18). For the reasons discussed below, the Court grants Definium's Motion to Dismiss.

## I.   BACKGROUND

The following are properly pled factual allegations that the Court takes as true for the purpose of resolving Definium's Motion to Dismiss.[1]

Definium, formerly known as Mind Medicine, Inc. or MindMed, is a clinical-stage biopharmaceutical focused on the research and development of psychedelic-based therapeutics. D.I. 1 ¶¶ 20, 26. Among its drug candidates is MM120, a pharmaceutically optimized form of lysergic D-tartrate ("LSD"), which is being developed for the treatment of certain mental health disorders, such as Generalized Anxiety Disorder ("GAD") and Major Depressive Disorder ("MDD"). *Id.* Signant, an evidence generation company, provides electronic clinical outcome assessment ("eCOA") services for clinical trials, which assists companies by "captur[ing] patient-reported outcomes, clinical observations, and performance metrics through validated electronic interfaces." *Id.* ¶¶ 23-24. Signant's eCOA services and SmartSignals platform are not "generic, off-the-shelf capabilities" and "represent years of investment, innovation, and refinement." *Id.*

---

[1] Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all factual allegations in the Amended Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

On July 21, 2020, Bracket Global LLC, Signant's predecessor-in-interest, and Definium (then, MindMed) entered into a Mutual Confidentiality and Non-Disclosure Agreement ("NDA") to "assure the protection and preservation of the confidential and proprietary nature of information" between the parties. *Id.* ¶ 33. The NDA prohibited Definium from using Signant's proprietary information "for competitive purposes or to obtain any commercial advantage with respect to Signant." *Id.* ¶ 34.

In 2021, Definium hired Signant to perform eCOA services for Phase 2 of Definium's MM120 clinical trial. *Id.* ¶ 31. On March 16, 2022, the parties executed a Master Services Agreement ("MSA"), where Signant was to provide services in connection to the clinical studies sponsored by Definium. *Id.* ¶ 37. In performing the Phase 2 work, Signant shared confidential and proprietary information with Definium. *Id.* ¶ 33. Signant's involvement in the Phase 2 was a "successful rescue" and "enabl[ed] the trial to proceed." *Id.* at ¶ 32.

In 2023, Definium solicited proposals from prospective vendors to provide services in connection with its Phase 3 MM120 clinical trial. *Id.* ¶ 40. Todd Solomon ("Solomon"), Definium's Director of Global Clinical Development, who previously supervised Signant's performance in connection with the Phase 2 clinical trials, oversaw the vendor selection for Phase 3. *Id.* ¶¶ 20, 43. Signant, the incumbent vendor that had just successfully delivered the clinical trials for Phase 2, submitted its bid for Definium's Phase 3 MM120 clinical trial on January 8, 2024. *Id.* ¶¶ 40, 45. Definium ultimately selected another vendor, EMA, to service the Phase 3 clinical trials. *Id.* ¶ 45. Minutes after Definium notified Signant that it lost the bid, "a member of EMA's personnel, who had been simultaneously negotiating to rejoin Signant as an employee, abruptly withdrew from those negotiations." *Id.*

3

Prior to the Definium Phase 3 contract, "EMA had never conducted a single Phase 3 central rating study" and "lacked the mature industry know-how to perform Phase 3 eCOA work." *Id.* ¶ 41. However, EMA was developing a cheaper, knock-off of Signant's platform that Definium could shape and utilize for its clinical trials. *Id.* ¶ 42. Throughout the selection process, Solomon "engaged in private discussions with at least one member of EMA's personnel, providing them with real-time information about the bidding process and Signant's competitive position." *Id.* ¶ 44. Solomon also informed EMA of Signant's intent to submit a proposal and, in coordination with EMA and Definium, "facilitated the disclosure of Signant's sensitive proprietary information," which "gave EMA an unfair advantage." *Id.*

After Definium selected EMA, Solomon's misconduct continued. *Id.* ¶ 46. Specifically, Solomon conspired with EMA and Definium to "make additional, targeted efforts to obtain and convey Signant's confidential materials to EMA." *Id.* ¶ 47 (cleaned up). Additionally, "Solomon continued his private communications with EMA personnel, providing ongoing assistance as EMA sought to operationalize the stolen trade secrets" for the Phase 3 clinical trials." *Id.* Solomon "engaged in these acts because he was obtaining a financial interest in EMA, which ultimately provided him with a personal stake in EMA's growth and success." *Id.* ¶ 48. Furthermore, Solomon's actions were "within the scope of his employment" as an executive of Definium "specifically designated to manage the Phase 3 procurement." *Id.* ¶ 49.

On February 2, 2026, Signant filed its Complaint against Definium for breach of contract and violation of the Delaware Uniform Trade Secrets Act ("DUTSA") and the Defense of Trade Secrets Act ("DTSA"). D.I. 1. On February 23, 2026, Definium filed this Motion to Dismiss seeking dismissal of Signant's Complaint. D.I. 11.

4

## II.    LEGAL STANDARD

"To state a viable claim, a plaintiff must offer a short and plain statement showing that he is entitled to relief, including 'allegations plausibly suggesting (not merely consistent with)' such entitlement." *Bah v. United States*, 91 F.4th 116, 119 (3d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  A complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  The complaint must set forth enough facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.*  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A]t the motion-to-dismiss stage, the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678-79).  "In ruling on a motion to dismiss," a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (quoting *Iqbal*, 556 U.S. at 678).  Thus, "[t]he primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether they are entitled to offer evidence to establish the facts alleged in the complaint." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023).  In other words, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

## III.    DISCUSSION

Definium moves to dismiss Signant's Complaint, which asserts three causes of action: (1) breach of contract; (2) violation of the DUTSA; and (3) violation of the DTSA.

5

### A. Signant Fails to Sufficiently Plead Trade Secret Misappropriation under the DTSA

To survive a motion to dismiss for failure to state a claim for trade secret misappropriation under the DTSA, Signant "must allege (1) a trade secret (2) connected to interstate [or foreign] commerce (3) that defendants misappropriated." *JPMorgan Chase Bank, Nat'l Ass'n v. Argus Info. & Advisory Servs. Inc.*, 765 F. Supp. 3d 367, 374 (D. Del. 2025); 18 U.S.C. § 1836(b)(1). Definium challenges the first and third elements. The Court addresses each argument in turn below.

"To plead the existence of a trade secret in a misappropriation claim brought under the DTSA, [Signant] must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). Definium contends that Signant fails to plead the existence of a protectable trade secret because the alleged trade secrets are "generic references to broad categories of information [that] would be insufficient as a matter of law to identify a trade secret." D.I. 12 at 9. In support of its contention, Definium cites numerous decisions in which courts dismissed complaints purportedly containing language "nearly identical" to that used in Signant's Complaint. *Id.* at 10-11. According to Definium, Signant's failure to plead specific factual allegations prevents any determination regarding the scope of the asserted trade secret protection. *Id.* at 12 (citing *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-2965, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013)).

In Signant's view, its Complaint identifies trade secrets with particularity. D.I. 17 at 6. Specifically, Signant contends that the Complaint identifies: "(i) Signant's eCOA operating procedures and clinical trial methodologies; (ii) its proprietary data architecture and data structures; (iii) pricing data and pricing models; (iv) data quality monitoring procedures; (v)

6

training programs; and (vi) market strategies." *Id.* (citing D.I. 1 ¶¶ 23-25, 71). Signant further contends that its alleged trade secrets are "anchored to a specific relationship, transaction, and mechanism of misappropriation—and that level of particularity readily satisfies the pleading standard." *Id.* at 7.

While "the information alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it, [Signant] need not spell out the details of the trade secret to avoid dismissal." *Oakwood*, 999 F.3d at 906. The Complaint must identify the trade secret "with sufficient particularity . . . to permit [Definium] to ascertain at least the boundaries within which the secret lies." *Id.*

After reviewing Signant's Complaint, the Court finds that Signant fails to identify its trade secrets with sufficient particularity and only identifies broad categories of information. *See* D.I. 1 ¶¶ 25 ("Signant has invested enormous resources developing and protecting its trade secrets, including its market strategies, proprietary data architecture, clinical trial methodologies, pricing models, and data quality monitoring procedures"); 71 ("Signant's confidential proprietary information – including its pricing data, proprietary data structures, operating procedures, methodologies, training programs, and data quality monitoring procedures – constitute trade secrets under the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001(4)"). Signant's allegations do not meaningfully distinguish the alleged protected information from general business information, nor do they provide facts sufficient to narrow or define the alleged trade secrets at issue. *See Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 384 n.24 (3d Cir. 2021) ("[A] list of general categories and types of information they allege comprise their trade secrets is not enough to identify the trade secrets at issue with the particularity necessary for Defendant to identify the information which Plaintiffs claim was misappropriated because they are too general to specify

the trade secrets at issue." (citing *Dura Glob. Techs, Inc. v. Magna Donnelly, Corp.*, No. 7-10945, 2007 WL 4303294, at *4 (E.D. Mich. Dec. 6, 2007))).

The Court further finds that Signant's reliance on *Chatham Fin. Corp. v. Milhaus, LLC* is misplaced. 807 F. Supp. 3d 373 (D. Del. 2025). Unlike Signant, the plaintiff in *Chatham* sufficiently pled the existence of trade secrets by describing specific front-end and back-end features of its application that it alleged were proprietary and entitled to trade secret protection. *Id.* at 384. In this action, Signant's allegations more closely resemble those in *Lithero, LLC v. AstraZeneca Pharms. LP*, where the court held that plaintiff identified only "large, general areas of information that Plaintiff alleges to have shared with Defendant," without specifying the trade secrets contained within those categories. No. 19-2320, 2020 WL 4699041, at *2 (D. Del. Aug. 13, 2020). The court further explained that, absent such specificity, the defendant lacked sufficient notice of what information it was alleged to have misappropriated. *Id.* Like the plaintiff in *Lithero*, Signant relies on broad descriptions of information rather than identifying the specific trade secrets allegedly misappropriated. *Id.*; *see also You Map, Inc. v. Snap Inc.*, No. 20-162, 2021 WL 106498, at *6 (D. Del. Jan. 12, 2021). Such generalized allegations are insufficient to provide Definium with sufficient notice of the basis for Signant's trade secret misappropriation claim. *See id.* at *7 ("Plaintiff is required to state what the trade secrets are in sufficient detail to put Defendants on notice of what they are accused of misappropriating and for this Court to determine whether any misappropriation occurred."). Thus, Signant's allegations fail to identify with reasonable particularity the information from which trade secret protection is claimed.

Signant, in its opposition brief, attempts to characterize the alleged trade secrets more specifically by referring to its "eCOA operating procedures." D.I. 17 at 6. However, that narrowed characterization appears nowhere in the Complaint. The Court's analysis is confined to the

8

allegations actually pled, and Signant cannot amend or supplement its claims through arguments made in briefing. *See Stewart v. Boeing Co.*, No. 23-317, 2024 WL 774906, at *4 (D. Del. Feb. 26, 2024) ("As a preliminary matter, Plaintiff may not amend the pleading through argument in the briefing."); *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F. 2d 173, 181 (3d Cir. 1988) ("[L]egal theories set forth in [Signant's brief] are helpful only to the extent that they find support in the allegations set forth in the Complaint."). Thus, Signant's reliance on a more narrowly defined trade secret in its briefing does not cure the Complaint's failure to identify the alleged trade secrets with sufficient specificity.

Because Signant fails to sufficiently allege the existence of a trade secret, Signant necessarily fails to allege that any trade secret was misappropriated.[2] *See You Map, Inc.*, 2021 WL 106498, at *7 ("Plaintiff's failure to adequately identify the trade secrets renders the Court unable to determine if the Complaint plausibly alleges that Defendants misappropriated them."). Thus, Signant fails to state a claim for trade secret misappropriation under the DTSA. Accordingly, Signant's DTSA claim is dismissed without prejudice.

**B.    The Court Declines to Exercise Supplemental Jurisdiction over Signant's Remaining State Law Claims**

Signant alleges subject matter jurisdiction under 28 U.S.C. § 1331 for this cause of action and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). D.I. 1 ¶ 21 ("This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Signant's claims arise under federal law, including the Defend Trade Secrets Act (18 U.S.C. § 1836), and supplemental jurisdiction over Signant's state law claims pursuant to 28

---

[2] In light of the Court's finding that Signant has failed to plausibly allege the misappropriation of any trade secret, the Court need not address Definium's argument that Signant also fails to plausibly allege that Definium is liable for any purported misappropriation by Solomon.

U.S.C. § 1367(a) as all claims herein form part of the same case or controversy.").[3] The Court has now granted Definium's Motion to Dismiss with respect to Signant's sole claim arising under federal law. Absent a viable federal claim, the Court declines to exercise supplemental jurisdiction over Signant's state law claims.[4] *See, e.g., Coastal Elec. Constr., LLC v. Jernigan*, C.A. No. 25-1295-GBW, 2026 WL 1078697, at *4 (D. Del. Apr. 21, 2026) (dismissing DTSA claim and exercising discretion to decline state law claims absent a viable federal cause of action); *Varonis Sys., Inc. v. Guanciale*, C.A. No. 25-571-GBW, 2026 WL 370958, at *4 (D. Del. Feb. 10, 2026) (same).

## IV.    CONCLUSION

For all the foregoing reasons, Defendant Definium's Motion to Dismiss Signant's Complaint (D.I. 11) is granted. The Court will issue an Order consistent with this Memorandum Opinion.

---

[3] Signant alleges that "Signant Health Holding Corp. is a Delaware corporation" and that Defendant "is a Delaware corporation." D.I. 1 ¶¶ 16, 20. Thus, there is not complete diversity among the parties.

[4] The Court need not reach Definium's motion to strike to strike paragraphs 3, 4, 9, 11, 12, 41 and 57 of the Complaint because it grants Definium's Motion to Dismiss.

10